# UNITED STATES BANKRUPTCY COURT
# WESTERN DISTRICT OF KENTUCKY
# LOUISVILLE DIVISION

| | |
|---|---|
| IN RE:<br><br>RW LOUISVILLE HOTEL ASSOCIATES, LLC<br><br>        Debtor | BANKRUPTCY NO. 10-35356<br><br>CHAPTER 11 |

## OBJECTION TO EMERGENCY MOTION FOR INTERIM AND FINAL ORDERS AUTHORIZING DEBTOR'S POST-PETITION USE OF CASH COLLATERAL

Wells Fargo Bank, National Association, formerly known as Wells Fargo Bank Minnesota, National Association, successor by merger to Norwest Bank Minnesota, National Association, as trustee for the registered holders of DLJ Commercial Mortgage Corp., Commercial Mortgage Pass-Through Certificates, Series 1998-CF2 (the "Lender"), acting by and through ORIX Capital Markets, LLC, solely in its capacity as special servicer, objects to the Emergency Motion for Interim and Final Orders Authorizing Debtor's Post-Petition Use of Cash Collateral (the "Motion"), filed by the Debtor RW Louisville Hotel Associates, LLC (the "Debtor") on October 8, 2010. In support of this Objection, Lender states as follows:

### INTRODUCTION

As set forth below, Lender has a perfected lien on (i) all of the Debtor's *pre-petition* accounts, rents, proceeds, profits, cash and other revenues; (ii) all of the Debtor's *post-petition* accounts, rents, proceeds, profits, cash and other revenues. Thus, all of the Debtor's cash, both pre- and post-petition, constitutes Lender's "cash collateral." Lender does not consent to the use of cash collateral in this case, which was filed at the eleventh hour to stave off the appointment of a receiver in a state court foreclosure case. Nor is the Debtor capable of adequately protecting Lender in exchange for any use of cash collateral: it has no unencumbered cash to make periodic

1

payments, and it has no unencumbered assets on which to grant replacement liens. Debtor's offer of protection -- to give liens on assets in which Lender already has a lien – is woefully insufficient. Accordingly, the Court should deny the Motion.

## BACKGROUND

1. Debtor is the owner and operator of a hotel located on real estate commonly known as 1325 South Hurstbourne Parkway, Louisville, Kentucky 40222 (the "Premises"). The legal description corresponding to the Premises is attached hereto as Exhibit 1.

2. On May 21, 1998, Debtor executed and delivered to Column Financial, Inc. ("Column") a Promissory Note (the "Note") in the original principal amount of Eighteen Million, Five Hundred Thousand and 00/100 Dollars ($18,500,000.00), a copy of which is attached hereto as Exhibit 2.

3. The Note was subsequently transferred to Lender by Allonge to Promissory Note (the "Allonge") dated December 3, 1998, which is attached at the end of the Note. Lender is the holder in due course of the Note by virtue of the Allonge.

4. To secure the obligations evidenced by the Note, Debtor executed and delivered to Column a Mortgage, Assignment of Leases and Rents and Security Agreement (the "Mortgage") dated as of May 21, 1998, a copy of which is attached as Exhibit 3. The Mortgage was duly recorded on June 8, 1998 in Book 4716, Page 123 in the Office of the Clerk of Jefferson County, Kentucky (the "Recorder's Office"). The mortgage conveyed a first lien on the Premises, together with all improvements and appurtenances. The Mortgage was assigned to Lender by Assignment of Mortgage, Assignment of Leases and Rents and Security Agreement and Assignment of Leases, Rents and Revenues (the "Assignment of Mortgage") dated as of

May 28, 1998, effective as of December 3, 1998, and recorded April 22, 1999, in Book 7229, Page 899, in the Recorder's Office, a copy of which is attached as Exhibit 4.

5. To further secure payment of the amount due under the Note, Debtor executed and delivered to Column an Assignment of Leases and Rents (the "Assignment of Rents") dated as of May 21, 1998, recorded on June 8, 1998 in Book 7050, Page 514 in the Recorder's Office, a copy of which is attached hereto as Exhibit 5. The Assignment of Rents, among other things, pledged to the holder of the Note the leases, deposits, rents, issues, profits, revenues, royalties, accounts, rights, benefits, income and room rentals from the Premises. The Assignment of Rents was assigned to Lender by the Assignment of Mortgage.

6. As further security for the indebtedness evidenced by the Note, in the Mortgage, Debtor granted a security interest in the collateral described therein (the "Collateral"). A UCC financing statement evidencing such security interest was filed in the office of the Delaware Secretary of State on or about April 5, 2010, as filing number 20101159866 (the "UCC Financing Statement"). A copy of the UCC Financing Statement is attached hereto as Exhibit 6. Lender is the owner and holder of the security interests in the Collateral by virtue of the Assignment of Mortgage and UCC Financing Statement.

7. The Note, Allonge, Mortgage, Assignment of Rents, UCC Financing Statement and any other instrument or agreement relating to and/or securing the indebtedness evidenced by the Note shall hereafter be referred to as the "Loan Documents."

8. There is due an owing from Debtor to Lender not less than $15,137,133.23, which sum includes principal, interest and certain other premiums, costs, fees and expenses to September 21, 2010, plus per diem interest of $4,492.16.

3

9. On September 29, 2010, Lender instituted a foreclosure action against Debtor in Jefferson County Circuit Court, Case No. 10-CI-403823. The Lender's motion for the appointment of a receiver in that action precipitated the instant bankruptcy case.

## ARGUMENT

**I. THE DEBTOR'S CASH AND POST-PETITION REVENUES CONSTITUTE "CASH COLLATERAL."**

"Cash collateral" is defined to mean the following:

> Cash, negotiable instruments, documents of title, securities, deposit accounts, or other cash equivalents whenever acquired in which the estate and an entity other than the estate have an interest and includes the proceeds, products, <u>rents</u>, or profits of the property and the <u>fees, charges, accounts or other payments for the use or occupancy of rooms and other public facilities in hotels, motels, or other lodging properties</u> subject to a security interest as provided in section 552(b) of this title, whether existing before or after the commencement of a case under this title.

*See* 11 U.S.C. § 363(a) (emphasis added).

On information and belief, all of the Debtor's pre-petition cash constitutes the profits and proceeds from the operation of the Premises as a hotel. Pursuant to the Loan Documents set forth above, Lender has a perfected security interest in all such cash.

In addition, all post-petition revenues to be generated by the operation of the Premises as a hotel, including revenues from the rental of rooms or other parts of the Premises, constitute Lender's cash collateral under Section 552(b) of the Bankruptcy Code. *See, e.g., In re Union-Go Dairy Leasing, LLC*, 2010 Bankr. LEXIS 1468 (Bankr. S.D. Ind. May 6, 2010) ("a prepetition security interest in rents of property subject to a security agreement entered into prior to the petition date continues in full force and effect postpetition by virtue of § 552(b) of the Bankruptcy Code.")

Thus, pursuant to the Loan Documents and Section 552(b), all of the cash that the Debtor

possesses, and all of the cash that the Debtor will generate during the pendency of this case, constitutes Lender's cash collateral under Section 363 of the Bankruptcy Code.

## II. THE CASH COLLATERAL MOTION SHOULD BE DENIED.

Because all of the Debtor's pre- and post-petition cash constitutes cash collateral, the Debtor cannot use such cash unless the Lender consents, or the Debtor is capable of providing adequate protection to the Lender. *See* 11 U.S.C. § 363(c)(2), (e); 361. Because the Lender does not consent, and because the Debtor is incapable of providing adequate protection, the Motion should be denied.

### A. The Lender Does Not Consent to the Use of Its Cash Collateral.

The Lender does not consent to the Debtor's use of the pre- or post-petition cash generated by the Premises, both of which constitute Lender's cash collateral. *See* 11 U.S.C. § 363(c)(2)(A).

### B. The Debtor Is Incapable of Providing Adequate Protection.

The Debtor seeks nearly unrestricted authority to use Lender's cash collateral, but it has not submitted any kind of financial statements, projections or a budget. Every dollar of cash it holds, and every dollar of cash it will generate post-petition, already constitutes cash collateral. The Debtor has not proposed, and cannot propose, any meaningful form of adequate protection.

Rather, it has offered "replacement liens" on the Debtor's "inventory, accounts receivable, and proceeds thereof." This is not adequate protection, because the Lender <u>already has a lien on post-petition accounts and proceeds</u> by virtue of Section 552(b) of the Bankruptcy Code. Offering a replacement lien on post-petition cash adds nothing additional to the Lender's collateral, let alone enough to offset the use of Lender's cash to pay the enormous bankruptcy administrative expenses the Debtor stands to incur. According to its Motion to Retain Counsel,

5

it spent over $33,000 in bankruptcy counsel fees in approximately one week. *See* Docket No. 7 at ¶ 7. If permitted to use cash collateral to pay that $33,000.00, the Lender's collateral position diminishes by exactly $33,000.00. To adequately protect Lender from that collateral loss, the Debtor must provide something to offset that loss. The problem for the Debtor is that it has nothing to provide. There is no unencumbered cash or property from which to provide adequate protection to the Lender, so the Motion must be denied.

The Sixth Circuit has addressed this issue. In *In re Stearns Building*, 165 F.3d 28, 1998 U.S. App. 22121 (6th Cir. 1998), attached as Exhibit 7, the lender was secured by a mortgage on commercial property and an assignment of rents. As here, the debtor proposed to use cash collateral to pay administrative expenses "unrelated to the maintenance and operation of the complex, including the fees and expenses of its lawyers and consultants involved in the bankruptcy." The lender objected to the use of any cash collateral that was not directly related and necessary to the operation of the complex itself, and it sought disgorgement of post-default rent used to pay bankruptcy counsel, as well as all rents net of operational expenses associated with the real estate. The bankruptcy court granted the relief sought by the lender, and ordered turnover to the lender of the net rents and counsel's retainer. At issue before the Sixth Circuit was whether the Debtor was entitled to a stay pending appeal, and the Court had to assess the likelihood of success on appeal. The Sixth Circuit found that success was unlikely. *See id.*

In so doing, the Sixth Circuit adopted the reasoning of *In re River Oaks Partnership*, 166 B.R. 94 (E.D. Mich. 1994), which "rejected the argument that newly generated rents each month and the continued maintenance of the property constituted adequate protection for the use of the cash collateral to pay [an expert witness fee]." *Id.* at *14. The Sixth Circuit quoted with approval the following passage from *River Oaks*, which is directly applicable to the instant issue:

> Where . . . there is a specific assignment of rents given as security, a diversion of any portion of the rents to a party other than the secured party is clearly a diminution of the secured party's interests in the assignment of rents portion of the security. . . . The secured party has a security interest in the full amount of the future rents. Therefore, this court cannot accept that the use of future rents to replace the expenditure of the prior months rents somehow provides adequate protection for the secured party.

*Stearns Building* at *14 (*quoting River Oaks* at 97-98.)

Proposing to grant a replacement lien on post-petition revenues, as the Debtor does, in which Lender already has a security interest, is the functional equivalent of paying the Lender out of its own collateral, which, as indicated in *Stearns Building*, does not provide adequate protection. To protect Lender from the diminution in its collateral that it will incur if the Debtor is using cash collateral to pay bankruptcy administrative expenses, the Debtor must be able to provide something new to replace that lost value. It simply does not have anything to use that is not already fully-encumbered. *See also*, *In re Union-Go Dairy Leasing, LLC*, 2010 Bankr. LEXIS 1468 at *10-11 (debtor "cannot give [lender] a replacement lien in the Rents where [lender's] interest in such postpetition Rents was already fully secured by virtue of § 552(b)").

## **CONCLUSION**

WHEREFORE, Lender respectfully requests that the Court enter the attached Order denying the Motion.

7

Respectfully submitted,

*/s/ Brian H. Meldrum*
Ian Ramsey
Brian H. Meldrum
D. Cooper Robertson
STITES & HARBISON, PLLC
400 West Market Street
Suite 1800
Louisville, KY 40202-3352
Telephone: (502) 587-3400
Facsimile: (502) 779-8296

*COUNSEL FOR LENDER*

# CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing Objection was served on this 12th day of October, 2010 either via the ECF System, which will send an electronic notice of filing to counsel of record and all parties having filed a request for notice.

*/s/ Brian H. Meldrum*
Brian H. Meldrum

805070:4:LOUISVILLE