**UNITED STATES BANKRUPTCY COURT**
**WESTERN DISTRICT OF KENTUCKY**
**LOUISVILLE DIVISION**

**ELECTRONICALLY FILED**

IN RE:

RW LOUISVILLE HOTEL ASSOCIATES, LLC                    CHAPTER 11

   DEBTOR IN POSSESSION                         CASE NO. 10-35356

**PLAN OF REORGANIZATION OF RW LOUISVILLE HOTEL ASSOCIATES, LLC**
**PURSUANT TO CHAPTER 11 OF THE UNITED STATES BANKRUPTCY CODE**

RW Louisville Hotel Associates, LLC ("RW Louisville" or the "Debtor") proposes the following plan of reorganization pursuant to Section 1121(a) of Title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (the "Plan").

The Disclosure Statement for the Plan of Reorganization of RW Louisville Hotel Associates, LLC (the "Disclosure Statement"), including the exhibits thereto, includes a discussion of the Debtor's history, business, results of operations and an analysis of the Plan.

All Holders of Claims are encouraged to consult the Disclosure Statement and read the Plan carefully before voting to accept or reject the Plan.

<div style="margin-left:40%">

STOLL KEENON OGDEN PLLC

/s/ Lea Pauley Goff
James S. Goldberg
Email:james.goldberg@skofirm.com
Lea Pauley Goff
Email: lea.goff@skofirm.com
Emily L. Pagorski
Email: emily.pagorski@skofirm.com
J. Kent Durning
Email: kent.durning@skofirm.com
2000 PNC Plaza
500 West Jefferson Street
Louisville, Kentucky 40202
Tel. (502) 333-6000
Fax (502) 333-6099

Counsel for the Debtor and
Debtor in Possession,
RW Louisville Hotel Associates, LLC

</div>

Dated: March 7, 2011

# TABLE OF CONTENTS

Page

PLAN SUMMARY ...................................................................................................1

ARTICLE I.  RULES OF INTERPRETATION, COMPUTATION OF TIME, GOVERNING LAW AND DEFINITIONS ...............................................................................................3
    A.    RULES OF INTERPRETATION, COMPUTATION OF TIME AND GOVERNING LAW .........3
    B.    DEFINED TERMS.........................................................................................3

ARTICLE II.  ADMINISTRATIVE CLAIMS; U. S. TRUSTEE FEES; AND PRIORITY CLAIMS .................................................................................................................8
    A.    ADMINISTRATIVE CLAIMS ..........................................................................8
    B.    U. S. TRUSTEE FEES..................................................................................9
    C.    PRIORITY TAX CLAIMS/OTHER PRIORITY CLAIMS .....................................9
    D.    CONSENT .................................................................................................9

ARTICLE III.  CLASSIFICATION AND TREATMENT OF CLASSIFIED CLAIMS AND EQUITY INTERESTS UPON EFFECTIVE DATE .................................................10
    A.    SUMMARY..............................................................................................10
    B.    CLASSIFICATION AND TREATMENT OF CLAIMS ..........................................10
        1.    Class 1 — Noteholder's Secured Claim .....................................10
        2.    Class 2 — De Minimis Claims ...................................................11
        3.    Class 3 — General Unsecured Claims.........................................11
        4.    Class 4 — Essential Vendor's Unsecured Claim...........................12
        5.    Class 5 — Advance Payment Claims ..........................................12
        6.    Class 6 - Priority General Unsecured Claims ..............................12
    C.    CONSENT ...............................................................................................13

ARTICLE IV.  TREATMENT OF DISPUTED CLAIMS...........................................13
    A.    DISPUTED CLAIMS ..................................................................................13
    B.    ESTIMATION OF CLAIMS ..........................................................................13
    C.    PAYMENTS AND DISTRIBUTIONS ON DISPUTED CLAIMS.........................13

ARTICLE V.  DISTRIBUTIONS........................................................................14
    A.    MEANS OF CASH PAYMENT.......................................................................14
    B.    DELIVERY OF DISTRIBUTIONS..................................................................14
    C.    UNDELIVERABLE DISTRIBUTIONS .............................................................14
        1.    Holding of Undeliverable Distributions........................................14
        2.    Failure to Claim Undeliverable Distributions................................14
    D.    WITHHOLDING AND REPORTING REQUIREMENTS ......................................14
    E.    TIME BAR TO CASH PAYMENTS ................................................................15
    F.    DISTRIBUTIONS AFTER THE EFFECTIVE DATE ...........................................15
    G.    SET-OFFS ..............................................................................................15
    H.    SETTLEMENT OF CLAIMS AND CONTROVERSIES........................................15

ARTICLE VI.  IMPLEMENTATION OF THE REORGANIZATION .....................16

| | | |
|---|---|---|
| A. | FUNDING OF BUSINESS OPERATIONS FROM THE CONFIRMATION DATE THROUGH THE EFFECTIVE DATE | 16 |
| B. | CORPORATE ACTION | 16 |
| C. | POST PETITION CONTRACTS | 16 |
| D. | PRESERVATION OF RIGHTS | 16 |
| E. | INSURANCE PRESERVATION | 17 |
| F. | ACCOUNTING | 17 |

**ARTICLE VII.  EXECUTORY CONTRACTS AND UNEXPIRED LEASES** .......................... 17

| | | |
|---|---|---|
| A. | FRANCHISE AGREEMENT | 17 |
| B. | OTHER CONTRACTS | 17 |
| C. | REJECTION OF OTHER EXECUTORY CONTRACTS AND UNEXPIRED LEASES | 18 |
| D. | REJECTION DAMAGES CLAIM | 18 |

**ARTICLE VIII.  CONDITIONS PRECEDENT TO CONFIRMATION AND THE EFFECTIVE DATE** ........................................................................................................................ 18

| | | |
|---|---|---|
| A. | ACCEPTANCE OR REJECTION OF THE PLAN | 18 |
| | 1.  Acceptance by Impaired Classes | 18 |
| | 2.  Nonconsensual Confirmation | 18 |
| B. | CONDITIONS PRECEDENT TO CONFIRMATION DATE OF THE PLAN | 19 |
| C. | CONDITIONS PRECEDENT TO THE EFFECTIVE DATE OF THE PLAN | 19 |
| D. | WAIVER OF CONDITIONS PRECEDENT | 19 |
| E. | THE CONFIRMATION ORDER | 20 |

**ARTICLE IX.  EFFECT OF PLAN CONFIRMATION** .................................................. 20

| | | |
|---|---|---|
| A. | DISCHARGE OF CLAIMS AND TERMINATION OF INTERESTS | 20 |
| B. | TERMINATION OF SUBORDINATION RIGHTS AND SETTLEMENT OF RELATED CLAIMS | 20 |
| C. | INJUNCTION | 20 |
| D. | TERMS OF EXISTING INJUNCTIONS OR STAYS | 21 |
| E. | EXCULPATION | 21 |

**ARTICLE X.  MISCELLANEOUS** ........................................................................... 21

| | | |
|---|---|---|
| A. | SECTION 1146 EXEMPTION | 21 |
| B. | BUSINESS DAY | 22 |
| C. | SEVERABILITY | 22 |
| D. | SUBSTANTIAL CONSUMMATION | 22 |
| E. | CONFLICTS | 22 |
| F. | FURTHER ASSURANCES | 22 |
| G. | NOTICES | 22 |
| H. | NOTICE AND CURE OF ALLEGED PLAN DEFAULTS | 23 |
| I. | FILING OF ADDITIONAL DOCUMENTS | 23 |
| J. | SUCCESSORS AND ASSIGNS | 23 |
| K. | CLOSING OF CASE | 24 |

**ARTICLE XI.  RETENTION OF JURISDICTION** ....................................................... 24

**ARTICLE XII.  MODIFICATION, REVOCATION, OR WITHDRAWAL OF THE PLAN** ..... 25

| | | |
|---|---|---|
| A. | MODIFICATION OF PLAN | 25 |
| B. | REVOCATION, WITHDRAWAL OR NON-CONSUMMATION | 25 |

**EXHIBITS**

De Minimis Claims in Class 2 ............................................................................................Exhibit A

General Unsecured Claims in Class 3................................................................................Exhibit B

Advance Payment Claims in Class 5 ...............................................................................Exhibit C

Assumption Schedule.........................................................................................................Exhibit D

Amortization Schedule......................................................................................................Exhibit E

# PLAN SUMMARY

This Plan is a true reorganizing plan in that it provides for RW Louisville to emerge from Chapter 11 as a reorganized debtor continuing to operate a full-service Holiday Inn hotel, made possible by a restructuring of RW Louisville's secured and unsecured debt.

1.     The Bankruptcy Code requires, among other things, that all Chapter 11 plans provide for the payment of administrative expenses (*i.e.* post-petition operations, counsel fees and U.S. Trustee fees), and divide the creditors by class and state their proposed treatment. In the event that at least one impaired class votes for the plan and at least one does not, then the Code requires that the plan provide that the creditors holding unsecured claims be paid at least as much as they would be paid in the event that RW Louisville ceased operating and liquidated its assets. This Plan proposes three categories of administrative expenses: The first category consists of professional fees; the second category is the Allowed Administrative Claim of Sysco/Louisville Food Services Co.; and the third category is the Remaining Administrative Claims, including claims under Section 503(b)(9) of the Bankruptcy Code that are unpaid as of the Confirmation Date. The Plan proposes one class of secured claims -- Class 1, consisting of the Noteholder's Secured Claim -- and five unsecured creditor classes: Class 2 is for De Minimis Claims *i.e.* general unsecured claims of $250 or less; Class 3 is general unsecured claims of more than $250; Class 4 is for the Essential Vendor's Unsecured Claim of Sysco; Class 5 is for Advance Payment Claims *i.e.* Claims arising from deposits on Pre-Petition reservations, and Class 6 is for general unsecured claims that are afforded priority under the Bankruptcy Code.

2.     With respect to the Allowed Professional Administrative Claims, Sysco's Allowed Administrative Claim and the Remaining Administrative Claims, the Debtor will pay such Claims in equal monthly installments over approximately six (6) months beginning after the Effective Date of the Plan.

3.     With respect to Class 1, the principal amount of the Noteholder's Secured Claim shall be $15,212,599.39 – notwithstanding that the Debtor contends that the value of the Collateral securing this Claim is substantially less -- which will be amortized over thirty-five (35) years at 4.25% interest. Beginning upon the first day of the calendar month following the Effective Date, the Debtor shall make six (6) monthly payments of $45,000 each to the Noteholder.[1] Interest shall begin accruing on the Noteholder's Secured Claim beginning on the first day of the seventh (7th) calendar month following the Effective Date at which time the Debtor shall begin making two-hundred-and-four (204) monthly payments of $69,657.58 to the Noteholder on its Claim with a balloon payment of all outstanding principal and interest in the two-hundred-and-fifth (205th) month.

4.     With respect to Class 2, De Minimis Claims, the Debtor will pay the Class 2 De Minimis Claims 80% of their value, without interest, within thirty (30) days of the Effective Date.

---

[1]     This is the amount of monthly adequate protection payments that the Noteholder agreed is sufficient to protect its interest in its collateral during this bankruptcy proceeding.

5.     With respect to the Class 3 General Unsecured Claims, the Debtor will pay these Claims 25% of their value, Pro Rata, with thirty-six (36) equal monthly payments beginning approximately six (6) months after the Effective Date.

6.     With respect to Class 4, the Essential Vendor's Unsecured Claim, the Debtor will pay Sysco $24,921.86 through thirty-six (36) equal monthly payments beginning approximately six (6) months after the Effective Date.  The Debtor will also commit to continue doing business with Sysco for a six (6) month period post confirmation at a level that is not less than 80% of the average volume it did with Sycco during the six (6) month period preceding the Petition Date.

7.     With respect to Class 5, the Advance Payment Claims, except for any Advance Payment Claim that has been satisfied as of the Effective Date, the Debtor anticipates satisfying these Claims in full by providing the agreed upon services to each such claimant on the date and time the Debtor agreed to do so with each.

8.     With respect to Class 6, the Priority General Unsecured Claims shall be paid in full but without interest with six (6) equal monthly payments beginning upon the Effective Date.

9.     RW Louisville will retain all Avoidance Actions, and handle them in its discretion.

10.     RW Louisville will assume -- and thus remain obligated on -- its Franchise Agreement and certain other executory contracts set forth in Exhibit D, as provided for in Article VII of the Plan.

11.     Reorganization of the Debtor pays the Holders of Claims more than they would receive in a liquidation of the Debtor's assets, and permits the Debtor to continue operating, preserving the jobs of its approximately 100 employees, and allows it to continue to provide services to the community.  As a result, RW Louisville's management recommends that Creditors vote in favor of the Plan.

12.     **The foregoing summary is provided for convenience only and is subject in every respect to the actual terms of the Plan and Disclosure Statement, both of which the reader is encouraged to read in full.**

(Remainder of page intentionally left blank)

**ARTICLE I.**
**RULES OF INTERPRETATION,**
**COMPUTATION OF TIME, GOVERNING LAW AND DEFINITIONS**

## A.     Rules of Interpretation, Computation of Time and Governing Law

1.     For purposes of the Plan: (a) whenever from the context it is appropriate, each term, whether stated in the singular or the plural, shall include both, and pronouns stated in the masculine, feminine or neutral gender shall include all; (b) any reference in the Plan to a contract, instrument, release, or other agreement or document being in a particular form or on particular terms and conditions means that such document shall be substantially in such form or substantially on such terms and conditions; (c) any reference in the Plan to an existing document or exhibit filed, or one to be filed, shall mean such document or exhibit, as it may have been or may be amended, modified or supplemented; (d) unless otherwise specified, all references in the Plan to Articles, Sections and exhibits are references to Articles, Sections and exhibits of or to the Plan; (e) the words "herein" and "hereto" refer to the Plan in its entirety rather than to a particular portion of the Plan; (f) the Plan Summary and captions and headings to Articles and Sections are inserted for convenience only and are not intended to be a part of or to affect the interpretation of the Plan; (g) the rules of construction set forth in section 102 of the Bankruptcy Code shall apply; and (h) any term used in capitalized form in the Plan that is not defined herein but that is used in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning assigned to it there as the case may be.

2.     Except as otherwise specifically provided herein, in computing any period of time prescribed or allowed by the Plan, the provisions of Bankruptcy Rule 9006(a) shall apply.

3.     Except to the extent that the Bankruptcy Code or Bankruptcy Rules are applicable, and subject to the provisions of any contract, instrument, release, indenture or other agreement or document entered into in connection herewith, the rights and obligations arising hereunder shall be governed by, and construed and enforced in accordance with, Kentucky law, without giving effect to the principles of conflict of laws thereof.

## B.     Defined Terms

Unless the context otherwise requires, the following terms shall have the following meanings when used in capitalized form herein:

1.     *Administrative Claim* means a Claim for costs and expenses of administration of the Chapter 11 Case allowed under section 503(b) of the Bankruptcy Code and entitled to priority pursuant to section 507(a)(2) of the Bankruptcy Code or incurred after the Petition Date, including, but not limited to: (a) any actual and necessary costs and expenses of preserving the Debtor's Estate and operating the activities of the Debtor (such as wages, salaries, employee expense reimbursement, and payment for leased equipment and premises); (b) compensation for legal, financial, advisory, accounting and other services and reimbursement of expenses Allowed by the Bankruptcy Court under section 330, 331 or 503(b) of the Bankruptcy Code to the extent incurred prior to the Effective Date; (c) all fees and charges assessed against the Debtor's Estate

under section 1930, Chapter 123 of Title 28, United States Code; and (d) all obligations designated as Allowed Administrative Claims pursuant to an order of the Bankruptcy Court.

2. *Advance Payment Claim* means a pre-petition unsecured non-priority Claim for payment made to the Debtor by a customer, prepetition, in order to reserve the right to rent conference rooms, hotel rooms, and/or other facilities or obtain event food and beverage service on the Debtor's premises at a date arising after the Petition Date.

3. *Allowed* means, with respect to any Claim, except as otherwise provided herein, any of the following: (a) the amount set forth on the Debtor's books and records, that is not otherwise the subject of a pending objection or dispute; (b) a Claim that has been scheduled by the Debtor in its Schedules as other than disputed, contingent or unliquidated and as to which: (i) the Debtor or any other party in interest has not filed an objection by the Claims Objection Deadline or (ii) no contrary Proof of Claim has been filed; (c) a Claim that either is not a Disputed Claim or has been Allowed by a final order; (d) a Claim that is Allowed: (i) in any stipulation with the Debtor specifying the amount and nature of such Claim executed prior to the Confirmation Date and approved by the Bankruptcy Court, or executed on or after the Confirmation Date; or (ii) in any contract, instrument, or other agreement entered into or assumed in connection with the Plan; (e) a Claim relating to a rejected executory contract or unexpired lease that: (i) is not a Disputed Claim or (ii) has been allowed by a final order; or (f) a Claim that is Allowed pursuant to the terms of the Plan.

4. *Assumption Schedule* means a listing of those executory contracts and unexpired leases set forth in Exhibit D, including but not limited to the Franchise Agreement, that the Debtor shall be deemed to have assumed upon the Effective Date.

5. *Avoidance Actions* means all claims and any avoidance, recovery, subordination or other actions against any Entity arising under the Bankruptcy Code, including sections 506, 510, 542, 543, 544, 545, 547, 548, 549, 550, 551, and 553 of the Bankruptcy Code, similar state laws or otherwise.

6. *Bankruptcy Code* means the Bankruptcy Reform Act of 1978, as codified in Title 11 of the United States Code, 11 U.S.C. § 101, *et seq.*, as amended from time to time.

7. *Bankruptcy Court* means the United States Bankruptcy Court for the Western District of Kentucky, Louisville Division.

8. *Bankruptcy Rules* are, collectively, the Federal Rules of Bankruptcy Procedure and the Official Bankruptcy Forms, as amended from time to time, and the Federal Rules of Civil Procedure, as amended from time to time and as applicable to the Chapter 11 Case or proceedings in it.

9. *Bar Date* means, for governmental Claims, April 6, 2011; for Administrative Claims, either February 1, 2011, or within twenty (20) days of the Claim arises; and for general unsecured Claims, February 1, 2011.

10.    *Cash Use Order* means the Final Agreed Order Authorizing The Debtor's Use Of Post-Petition Cash entered by the Bankruptcy Court on December 27, 2010 (D.I. 115), as modified, amended or supplemented.

11.    *Causes of Action* means all claims, actions, causes of action, choses in action, suits, debts, dues, sums of money, accounts, contracts, controversies, agreements, promises, variances, trespasses, damages, judgments, third-party claims, counterclaims, and crossclaims (including, but not limited to, the Avoidance Actions) of the Debtor (including, but not limited to, those actions identified in the Schedules, Statement of Financial Affairs or Disclosure Statement that are or may be pending on the Effective Date or instituted after the Effective Date against any Entity, based in law or equity, including, but not limited to, under the Bankruptcy Code, whether direct, indirect, derivative, or otherwise and whether asserted or unasserted as of the date of entry of the Confirmation Order).

12.    *Chapter 11 Case* means the case commenced under chapter 11 of the Bankruptcy Code by the Debtor, on the Petition Date, currently pending before the Bankruptcy Court.

13.    *Claim* has the meaning set forth in section 101(5) of the Bankruptcy Code.

14.    *Claims Objection Deadline* means the latest of (a) thirty (30) days after the Effective Date, (b) thirty (30) days after the timely filing of a proof of claim with the Bankruptcy Court, or (c) such later date as may be fixed by the Bankruptcy Court, whether fixed before or after the dates specified in clauses (a) and (b) above.

15.    *Class* means a category of Holders of Claims as set forth in Article III of the Plan.

16.    *Collateral* means the collateral pledged to the Noteholder by RW Louisville per-petition to secure the indebtedness evidenced by the Note, Mortgage Agreement, and other Loan Documents.

17.    *Confirmation* means the entry of the Confirmation Order, subject to all conditions specified in Article VIII Section B herein having been satisfied or waived pursuant to Article VIII Section D of the Plan.

18.    *Confirmation Date* means the date upon which the Confirmation Order is entered on the docket of the Chapter 11 case by the Bankruptcy Court.

19.    *Confirmation Hearing* means the hearing held by the Bankruptcy Court pursuant to section 1128 of the Bankruptcy Code to consider Confirmation of the Plan, as the same may be adjourned from time to time.

20.    *Confirmation Order* means the final order of the Bankruptcy Court confirming the Plan in accordance with the provisions of Chapter 11 of the Bankruptcy Code.

21.    *Consummation* means the occurrence of the Effective Date.

22.    *Debtor and Debtor in Possession* shall mean RW Louisville Hotel Associates, LLC, as debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

23.     *Debtor's Affiliates* means James J. Papovich, individually and in his capacity as an officer and director of the Debtor; Paprand, LLC; Papcar, LLC; Papcar Hospitality, LLC; and Ridgewood Hotels, Inc.

24.     *De Minimis Claim* means any pre-petition unsecured non-priority Claim in the amount of $250 or less.

25.     *Disclosure Statement* means the written Disclosure Statement for the Plan of Reorganization of RW Louisville Hotel Associates, LLC, as amended, supplemented or modified.

26.     *Disputed Claim* means a Claim, or any portion thereof: (a) listed on the Schedules as unliquidated, disputed or contingent (excepting those contingent Claims for Advance Payments that have not been satisfied as of the Effective Date); (b) that is the subject of an objection or request for estimation or is otherwise disputed by the Debtor or any other party in interest in accordance with applicable law and which objection has not been withdrawn, resolved or overruled by a final order of the Bankruptcy Court; (c) that is in excess of the amount scheduled as other than disputed, contingent or unliquidated; or (d) that is otherwise disputed by the Debtor or any other party in interest in accordance with applicable law, which dispute has not been withdrawn, resolved or overruled by a final order of the Bankruptcy Court.

27.     *Distribution* means any consideration given to any Entity by the Debtor as provided for under the Plan.

28.     *Effective Date* means 30 days after the date on which all Conditions Precedent To Effectiveness of Plan, as set forth in Article VIII Section C have been satisfied or waived pursuant to Article VIII Section D and no stay of the Confirmation Order is in effect. When used in the Plan, Effective Date means on the Effective Date or as soon as reasonably practicable thereafter.

29.     *Entity* means a person, a corporation, a general partnership, a limited partnership, a limited liability company, a limited liability partnership, an association, a joint stock company, a joint venture, an Estate, a trust, an unincorporated organization, a governmental unit or any subdivision thereof, the United States Trustee or any other entity.

30.     *Essential Vendor* means a vendor that has regularly provided RW Louisville with necessary pre-petition goods or services and with which RW Louisville is committing to do a certain level business post-petition given the essential nature of the vendor relationship to RW Louisville's reorganization.

31.     *Essential Vendor's Unsecured Claim* means the unsecured claim of Sysco/Louisville Food Services Co. ("Sysco") in the amount of $99,687.45, incurred providing necessary goods and services to RW Louisville before the Petition Date, other than those amounts included in Sysco's Allowed Administrative Claim.

32.     *Estate* means the Estate of the Debtor in the Chapter 11 Case.

33.    *Franchise Agreement* means that agreement between RW Louisville Hotel Associates, LLC, and the Franchisor dated April 21, 2006, as the same may have been modified, amended or renewed from time to time.

34.    *Franchisor* means Holiday Hospitality Franchising, Inc., also known as Inter-Continental Hotels Group, or any successor in interest to the Franchise Agreement.

35.    *General Unsecured Claim* means any Unsecured Claim in an amount greater than $250 that has not been paid by the time of Confirmation, excluding Priority Unsecured Claims, De Minimis Claims, Advance Payment Claims, and the Essential Vendor's Unsecured Claim.

36.    *Holder* means any Entity owning or holding a Claim.

37.    *Impaired* means, when used with reference to a Claim, a Claim that is impaired within the meaning of section 1124 of the Bankruptcy Code.

38.    *Loan Documents* means any and all documents executed in connection with the Note and Mortgage Agreement.

39.    *Mortgage Agreement* means that Mortgage, Assignment Of Leases And Rents And Security Agreement, dated May 21, 1998, between Column Financial, Inc. and the Debtor, securing the Note, as subsequently assigned to the Noteholder.

40.    *Note* means that Promissory Note, dated as of May 21, 1998, by the Debtor in favor of Column Financial, Inc., in the original principal sum of $18,500,000.00 as subsequently assigned to the Noteholder.

41.    *Noteholder* or Lender means Wells Fargo Bank, National Association, formerly known as Wells Fargo Bank Minnesota, National Association, Successor by Merger to Norwest Bank Minnesota, National Association, as Trustee for the Registered Holders of DLJ Commercial Mortgage Corp., Commercial Mortgage Pass-Through Certificates, Series 1998-CF2, acting by and through ORIX Capital Markets, LLC, solely in its capacity as special servicer.

42.    *Noteholder's Secured Claim* means the Secured Claim of the Noteholder in the amount of $15,212,599.39.

43.    *Petition Date* means October 8, 2010.

44.    *Plan* means this Plan of Reorganization of RW Louisville Hotel Associates, LLC Pursuant to Chapter 11 of the United States Bankruptcy Code, including, but not limited to, any exhibits and schedules hereto, either in its present form or as it may be modified, amended or supplemented.

45.    *Priority Tax Claim* means a Claim of a governmental unit of the kind specified in sections 502(i) and 507(a)(8) of the Bankruptcy Code, if any.

46.	*Professional* means any professional or other Entity that (a) has been retained in the Chapter 11 Case by a final order of the Bankruptcy Court pursuant to sections 327, 328 or 1103 of the Bankruptcy Code or otherwise, including, but not limited to, Stoll Keenon Ogden PLLC ("SKO").

47.	*Professional Administrative Claim* means any Claim for services performed and expenses incurred by a Professional after the Petition Date.

48.	*Proof of Claim* shall mean official Form 10 as is used in the Bankruptcy Court as evidence of a Claim due a creditor, properly filled out, executed with supporting documentation, and filed with the Bankruptcy Court on or before the appropriate Bar Date.

49.	*Priority General Unsecured Claim means* the priority Claims of Total Event Services ($1,259.91), Metro Housing, Inc. ($2,062.50), Site Search, LLC ($1,650.19) and the Commonwealth of Kentucky ($300).

50.	*Pro Rata* means proportionately so that with respect to an Allowed Claim, the ratio of (a) (i) the amount of property distributed on account of a particular Allowed Claim to (ii) the amount of that particular Allowed Claim, is the same as the ratio of (b) (i) the amount of property distributed on account of all Allowed Claims of the Class in which the particular Allowed Claim is included to (ii) the amount of all Allowed Claims in that Class.

51.	*Schedules* shall mean the Schedules of Assets and Liabilities and Statement of Financial Affairs, and all amendments thereto, filed by the Debtor in this Chapter 11 case.

52.	*Sysco's Allowed Administrative Claim* means the Administrative Claim of Sysco/Louisville Food Services Co. ("Sysco") as agreed by the Debtor, the Noteholder and Sysco, pursuant to that Agreed Order Allowing Sysco/Louisville Food Services Co. An Administrative Claim under 11 U.S.C. § 503(b)(9) entered by the Bankruptcy Court on December 1, 2010 (D.I. 94).

53.	*Third Party Financing* means any financing obtained by the Debtor from a third party and secured by a junior lien on assets of the Debtor's bankruptcy Estate.

54.	*Unimpaired* means, when used with reference to a Claim, a Claim that is not impaired within the meaning of section 1124 of the Bankruptcy Code.

## ARTICLE II.
## ADMINISTRATIVE CLAIMS; U. S. TRUSTEE FEES; AND PRIORITY CLAIMS

### A.	Administrative Claims

1.	Each Professional Administrative Claim Allowed by the Court on fee application, and any other Administrative Claim made by motion and allowed by the Court before Confirmation, and not already paid by the Effective Date shall be paid by the Debtor (a) in full with all other such Claims over not more than six (6) months following the Effective Date in equal monthly installments; (b) upon such other terms as may exist in the ordinary course of the

Debtor's business; or (c) upon such other terms as may be agreed upon between the Holder of such Allowed Professional Administrative Claim or Administrative Claim and the Debtor.

2. Sysco's Allowed Administrative Claim shall be paid by the Debtor (a) over not more than six (6) months beginning upon the Effective Date; or (b) upon such other terms as may be agreed upon by the Holder of the Sysco Allowed Administrative Claim and the Debtor. Sysco's Allowed Administrative Claim shall be paid in full prior to the Debtor's payment of any Professional Administrative Claim, Priority Tax Claim, or other Allowed Administrative Claim. All Claims identified in this Article, sections A and B, shall be paid in full prior to the Debtor's payment of any unsecured Claims.

3. All holders of Administrative Claims other than Professional Administrative Claims and Sysco's Allowed Administrative Claim, arising prior to the Effective Date shall seek allowance of such Claim from the Bankruptcy Court within twenty (20) days of the Effective Date, excepting any such Claim by Stoll Keenon Ogden PLLC which Claim shall be filed in accordance with the terms of the Court's November 16, 2010 Order Establishing Procedures For Interim Compensation And Reimbursement Of Expenses Of Stoll Keenon Ogden PLLC (D.I. 77). The Holders of Allowed Administrative Claims shall be paid before the later of (i) six (6) months after the filing of an Allowed Administrative Claim, or (ii) if the Debtor seeks to disallow the Administrative Claim, six (6) months after the Administrative Claim becomes an Allowed Claim.

**B.      U. S. Trustee Fees**

The fees payable to the U. S. Trustee shall be paid by the Debtor on its quarterly disbursements as and when they become due pursuant to 28 U.S.C. § 1930.

**C.      Priority Tax Claims/Other Priority Claims**

On, or as soon as reasonably practicable after, the latest of the Effective Date or the date such Priority Tax Claim or other Priority Claim, if any, becomes Allowed, the Holder of each, if any, shall receive, in full satisfaction, settlement, release, and discharge of and in exchange for such Claim, (1) cash equal to the unpaid portion of such Claim; (2) payment Pro Rata with similar Priority Claims over not more than six (6) months following the Effective Date; or (3) such other treatment as to which the Debtor and such Holder have agreed upon in writing.

The Priority Claims of the Internal Revenue Service in the amended amount of $17,898.87 and the scheduled Priority Claim of Louisville/Jefferson County Metro Revenue ($25,546.09) have been paid by the Debtor and shall be deemed disallowed on that basis.

**D.      Consent**

Pursuant to 11 U.S.C. § 1129, each holder of an Administrative Claim is deemed to have consented to the treatment set forth herein unless an objection hereto is timely filed by such Holder.

**ARTICLE III.**
**CLASSIFICATION AND TREATMENT**
**OF CLASSIFIED CLAIMS AND EQUITY INTERESTS**
**UPON EFFECTIVE DATE**

**A.      Summary**

The categories of Claims listed below classify Claims for all purposes, including voting, Confirmation and Distribution pursuant to the Plan and pursuant to sections 1122 and 1123(a)(1) of the Bankruptcy Code.  Pursuant to section 1123(a)(1) of the Bankruptcy Code, Administrative Claims, Priority Tax Claims and other Priority Claims have not been classified, but the treatment for such unclassified Claims is set forth in Article II.  Certain Claims that were scheduled by the Debtor, or that are the subject of a Proof of Claim filed in the Bankruptcy Case, and that have either been paid by the Debtor or satisfied through a credit given the Debtor by the Holder of the Claims, are not identified below and the Holders of any such Claims shall not receive any payments or Distributions on account of such Claims.

**B.      Classification and Treatment of Claims**

1.      <u>Class 1 — Noteholder's Secured Claim</u>

(a)      Classification: Class 1 consists of the Noteholder's Secured Claim, arising from the Note, the Mortgage Agreement and all other Loan Documents executed in connection with the same.  Notwithstanding the terms of this Plan, the Debtor contends that the value of the Collateral is substantially less than the face amount of this Claim.

(b)      Treatment:  Upon the Effective Date, the Noteholder's Secured Claim shall be deemed to consist of principal in the amount of $15,212,599.39 which Claim shall be amortized over thirty-five (35) years bearing interest at 4.25% per annum starting the first day of the seventh calendar month after the Effective Date.  Beginning upon the first day of the calendar month following the Effective Date, the Debtor shall make six (6) monthly payments of $45,000 each to the Noteholder.  Interest shall begin accruing on the Noteholder's Secured Claim beginning on the first day of the seventh (7th) calendar month following the Effective Date at which time the Noteholder shall receive two-hundred-and-four (204) consecutive monthly payments of $69,657.58 in full satisfaction, settlement, release and discharge of its Claim.  These Distributions shall consist of principal and interest as set forth on the amortization table attached at Exhibit E and incorporated here by reference.

(c)      In the event the Debtor obtains Third Party Financing to be secured by a junior lien on the Debtor's assets, those funds may be applied to reduce the principal owed on the Noteholder's Secured Claim, and in that event the remaining principal on the Noteholder's Secured Claim after application of the Third Party Financing shall be re-amortized over the remaining portion of the amortization period and the payments adjusted according to the amortization table at Exhibit E for the remaining monthly payments provided under the Plan. The Debtor may grant a lien to the party providing any such Third Party Financing in order to

secure that obligation, which lien shall not exceed 125% of the amount of the Third Party Financing paid to the Noteholder, and which lien shall be subordinant to that of the Noteholder.

The Debtor may pay off the Noteholder's Secured Claim at any time without penalty. The Noteholder's pre-petition liens on the Collateral shall remain in full force and effect until the Noteholder's Secured Claim is paid in full, at which time the Noteholder shall promptly record releases of its mortgage and any other security documents appearing in the public record. Further, the terms of the Plan, not the Loan Documents, shall govern the relationship between the Noteholder and the Debtor post-confirmation. The Debtor shall remain current and pay directly its taxes, insurance and franchise fees post-confirmation.

(d)     Voting: Class 1 is Impaired. The Holder of the Noteholder's Secured Claim is entitled to vote to accept or reject the Plan.

2.     <u>Class 2 — De Minimis Claims</u>

(a)     Classification: Class 2 consists of all De Minimis Claims, a schedule of which is attached at Exhibit A and incorporated here by reference as if set forth in full here, less those Claims that may be disallowed pursuant to Article IV, Section A.

(b)     Treatment: Within thirty (30) days of the Effective Date, or as soon as reasonably practicable thereafter, each Holder of such Allowed De Minimis Claim identified at Exhibit A shall receive in full satisfaction, settlement, release and discharge of and in exchange for the Allowed De Minimis Claim (i) 80% of the value of such Claim, with no interest having accrued or accruing on such Claim since the Petition Date; or (ii) such other treatment as to which the Debtor and the Holder of the Claim shall have agreed upon in writing; but only up to an amount no greater than 80% of the value of the face amount of the De Minimis Claim**.**

(c)     Voting: Class 2 is Impaired. Holders of De Minimis Claims in Class 2 are entitled to vote to accept or reject the Plan.

3.     <u>Class 3 — General Unsecured Claims</u>

(a)     Classification: Class 3 consists of all General Unsecured Claims, a schedule of which is attached at Exhibit B and incorporated here by reference as if set forth in full here, less those Claims that may be disallowed pursuant to Article IV, Section A.

(b)     Treatment: Beginning approximately six (6) months after the Effective Date, each Holder of such General Unsecured Claim identified at Exhibit B shall receive in full satisfaction, settlement, release and discharge of and in exchange for the Allowed General Unsecured Claim: (i) Pro Rata cash Distributions totaling 25% of the Allowed portion of the General Unsecured Claim with Distributions to be made in equal monthly installments for thirty-six (36) months, with the exception of the Released Parties, whose Claims may be paid only after all Distributions to the other Holders of unsecured Claims under the Plan are complete; or (ii) such other treatment as to which the Debtor and such

Holder shall have agreed upon in writing, but only up to an amount no greater than the total of the Holder's Pro Rata cash Distributions.

(c)     Voting: Class 3 is Impaired.  Holders of General Unsecured Claims in Class 3 are entitled to vote to accept or reject the Plan.

4.     Class 4 — Essential Vendor's Unsecured Claim

(a)     Classification: Class 4 consists of the Essential Vendor's Unsecured Claim in the amount of $99,687.45.

(b)     Treatment:  Beginning approximately six (6) months after the Effective Date, Sysco shall receive in full satisfaction, settlement, release and discharge of and in exchange for the Essential Vendor's Unsecured Claim: (i) a commitment by the Debtor to continue doing business with Sysco for six (6) months following the Effective Date at not less than 80% of the average volume of business it did with Sysco during the six (6) month period prior to the Petition Date and cash Distributions totaling 25% of the Allowed portion of the Essential Vendor's Unsecured Claim with distributions to be made in thirty-six (36) equal monthly installments; or (ii) such other treatment as to which the Debtor and such Holder shall have agreed upon in writing, but only up to an amount no greater than the total of the Holder's Distributions.

(c)     Voting: Class 4 is Impaired.  The Holder of the Essential Vendor's Unsecured Claim in Class 4 is entitled to vote to accept or reject the Plan.

5.     Class 5 — Advance Payment Claims

(a)     Classification: Class 5 consists of Advance Payment Claims, a schedule of which is attached at Exhibit C and incorporated by reference as if set forth in full here, less those Claims that may be disallowed pursuant to Article IV, Section A, Paragraph 2.

(b)     Treatment:  The Debtor shall provide services the Claim paid to reserve and this shall be deemed full payment of the Claim.

(c)     Voting: Class 5 is Unimpaired.  Holders of Advance Payment Claims in Class 5 are not entitled to vote to accept or reject the Plan.

6.     Class 6 - Priority General Unsecured Claims

(a)     Classification:  Class 6 consists of the priority Claims of Total Event Services ($1,259.91), Metro Housing, Inc. ($2,062.50), Site Search, LLC ($1,650.19) and the Commonwealth of Kentucky ($300).

(b)     Treatment: Within six (6) months of the Effective Date, each Holder of such Priority General Unsecured Claim shall receive in full satisfaction, settlement, release and discharge of and in exchange for the Priority General Unsecured Claim 100% of the value of such Claim, with no interest having accrued or accruing on such Claim since the Petition Date**.**

(c)     Voting: Class 6 is Impaired.     Holders of Priority General Unsecured Claims in Class 6 are entitled to vote to accept or reject the Plan.

**C.     Consent**

Pursuant to 11 U.S.C. § 1129, each holder of a secured and unsecured Claim is deemed to have consented to the treatment set forth herein unless an objection hereto is timely filed by such Holder.

<div align="center">

**ARTICLE IV.**
**TREATMENT OF DISPUTED CLAIMS**

</div>

**A.     Disputed Claims**

Within 30 days after the Effective Date, the Debtor shall object to the allowance of any Claims not already allowed by Court order and which the Debtor elects to dispute; provided, however, that the Debtor may seek authority from the Bankruptcy Court to extend such time period to object to such Claims.  All such objections shall be litigated to final order; provided, however, that the Debtor shall have the authority and sole discretion to file or not file any objections to Claims and shall have authority to settle, compromise or withdraw any objections to Claims, without approval of the Bankruptcy Court.

**B.     Estimation of Claims**

The Debtor may at any time request that the Bankruptcy Court estimate any contingent or Disputed Claim pursuant to section 502(c) of the Bankruptcy Code regardless of whether the Debtor previously has objected to such Claim or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court will retain jurisdiction to estimate any Claim at any time during litigation concerning any objection to any Claim, including, without limitation, during the pendency of any appeal relating to any such objection.  Subject to the provisions of section 502(j) of the Bankruptcy Code, in the event that the Bankruptcy Court estimates any contingent or Disputed Claim, the amount so estimated shall constitute the maximum allowable amount of such Claim.  If the estimated amount constitutes a maximum limitation on the amount of such Claim, the Debtor may pursue supplementary proceedings to object to the allowance of such Claim.  All of the aforementioned objection, estimation and resolution procedures are intended to be cumulative and not necessarily exclusive of one another. Claims may be estimated and subsequently compromised, settled, withdrawn or resolved by any mechanism approved by the Bankruptcy Court.

**C.     Payments and Distributions on Disputed Claims**

The Holder of any Claim that is listed as "disputed" on the Debtor's Schedules, as amended, and that is not listed on the Claims Register as having filed a Claim with the Bankruptcy Court on or before the Bar Date shall not receive any Distributions, except for the treatment of the Noteholder's Secured Claim set forth above in Article III, Section B, Paragraph 1.  No Distributions shall be made to the Holder of a General Unsecured Claim not listed in Exhibits A, B, or C.  Further, no interest shall be paid on Disputed Claims that later become

Allowed Claims or with respect to any Distribution to such Holder. No Distribution shall be made with respect to all or any portion of any Claim, a portion of which or all of which is a Disputed Claim, pending the entire resolution thereof.

## ARTICLE V.
## DISTRIBUTIONS

### A.    Means of Cash Payment

Cash payments, made pursuant to Article II and Article III, Section B of the Plan, shall as applicable, in the sole discretion of the Debtor, be made by (a) checks drawn on or (b) wire transfers from a domestic bank selected by the Debtor.

### B.    Delivery of Distributions

Subject to the provisions of Rule 2002(g) of the Bankruptcy Rules, and except as otherwise provided herein, Distributions to Holders of Allowed Claims shall be made at the address of each such Holder as set forth on the Schedules filed with the Bankruptcy Court, unless superseded by the address set forth on timely filed Proof(s) of Claim or some other writing filed with the Bankruptcy Court.

### C.    Undeliverable Distributions

1.    Holding of Undeliverable Distributions

If any Distribution to any Holder is returned to the Debtor as undeliverable, no further Distributions shall be made to such Holder unless and until the Debtor is notified by such Holder, in writing, of such Holder's then-current address. Upon such an occurrence, the appropriate Distribution shall be made as soon as reasonably practicable after such Distribution has become deliverable. All Entities ultimately receiving previously undeliverable cash shall not be entitled to any interest or other accruals of any kind. Nothing contained in the Plan shall require the Debtor to attempt to locate any Holder of an Allowed Claim.

2.    Failure to Claim Undeliverable Distributions

Any Holder of an Allowed Claim entitled to an undeliverable or unclaimed Distribution that does not provide notice of such Holder's correct address to the Debtor within the later of two (2) months after (a) the Effective Date or (b) the date of the initial Distribution made by the Debtor to such Holder, shall be deemed to have forfeited and shall be forever barred and enjoined from asserting any such Claim for an undeliverable or unclaimed Distribution against either the Debtor or its Estate. In such cases, all such forfeited Distributions by the Debtor shall be retained by the Debtor.

### D.    Withholding and Reporting Requirements

In connection with the Plan and all Distributions hereunder, the Debtor shall comply with all tax withholding and reporting requirements imposed by any U.S. federal, state or local or

non-U.S. taxing authority, and all Distributions hereunder shall be subject to any such requirements. The Debtor shall be authorized to take any and all actions that may be necessary or appropriate to comply with such withholding and reporting requirements. Notwithstanding any other provision of the Plan (a) each Holder of an unclassified or Allowed Claim that is to receive a Distribution pursuant to the Plan shall have sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed by any governmental unit, including income, withholding and other tax obligations, on account of such Distribution, and (b) the Debtor reserves the option, in its discretion, to not make a Distribution to or on behalf of such Holder pursuant to the Plan unless and until such Holder has made arrangements satisfactory to the Debtor for the payment and satisfaction of such tax obligations or has, to the Debtor's satisfaction, established an exemption therefrom. Any Distributions to be made pursuant to the Plan shall, pending the implementation of such withholding and reporting requirements, be treated as undeliverable pursuant to Article V Section C Paragraph 2 of the Plan.

**E.     Time Bar to Cash Payments**

All checks issued by the Debtor on account of unclassified or Allowed Claims shall be null and void if not negotiated within ninety (90) days from and after the date of issuance thereof. Requests for reissuance of any check shall be made directly to the Debtor by the Holder of the Allowed or unclassified Claim. Any Claim relating to such voided check shall be made on or before one hundred and eighty (180) days after the date of issuance of such check. After such date, all Claims relating to such voided checks shall be discharged and forever barred, and all such funds shall be treated as forfeited and distributed pursuant to Article V Section C Paragraph 2 of the Plan.

**F.     Distributions After the Effective Date**

Distributions made after the Effective Date to Holders of Claims that are not Allowed Claims as of the Effective Date, but that later become Allowed Claims, shall be deemed to have been made on the Effective Date.

**G.     Set-Offs**

Consistent with applicable law, the Debtor may, but shall not be required to, set-off against any Allowed Claim and the Distributions to be made pursuant to the Plan on account thereof (before any Distribution is made on account of such Claim), the claims, rights and Causes of Action of any nature that the Debtor may hold against the Holder of such Allowed Claim; provided, however, that neither the failure to effect such a set-off nor the allowance of any Claim hereunder shall constitute a waiver or release by the Debtor or its Estate of any such claims, rights and Causes of Action that the Debtor or its Estate may possess against such Holder.

**H.     Settlement of Claims and Controversies**

Pursuant to Bankruptcy Rule 9019 and in consideration for the Distributions and other benefits provided under the Plan, the provisions of this Plan shall constitute a good faith compromise of all Claims or controversies relating to the contractual, legal and subordination rights that a Holder of a Claim may have with respect to any Allowed Claim, or any Distribution

to be made on account of such an Allowed Claim. The Confirmation Order shall constitute the Bankruptcy Court's approval of the compromise or settlement of all such Claims or controversies, and the Bankruptcy Court's finding that such compromise or settlement is in the best interests of the Debtor, its Estate and Holders of Claims and is fair, equitable and reasonable.

## ARTICLE VI.
## IMPLEMENTATION OF THE REORGANIZATION

### A.    Funding Of Business Operations From The Confirmation Date Through The Effective Date

The Debtor is authorized to use Post-Petition Cash as that term is defined in the Cash Use Order, on terms, in amounts and for expenditures substantially similar to those set forth in the Cash Use Order from the Confirmation Date through the Effective Date of the Plan.

### B.    Corporate Action

Following Confirmation, the Debtor is authorized to (1) change its organization to that under a different section of the Internal Revenue Code than that under which it now operates and (2) change its state of incorporation, pursuant to applicable law and without further notice or leave of the Bankruptcy Court. All such changes shall be deemed authorized and approved without any further action by the Bankruptcy Court.

### C.    Post Petition Contracts

1.    The Debtor is authorized to ratify post-petition contracts entered into by it in the ordinary course of its business and is further authorized to enter into contracts post Confirmation for the generation of revenue in furtherance of its reorganized business operations..

### D.    Preservation of Rights

The Debtor retains all of its rights to, and in its sole discretion may, pursue any potential or existing Causes of Action (under any theory of law, including, without limitation, the Bankruptcy Code, and in any court or other tribunal including, without limitation, in an adversary proceeding filed in the Debtor's Chapter 11 Case). The Debtor expressly reserves all Causes of Action, known or unknown, for later adjudication and therefore, no preclusion doctrine, including, without limitation, the doctrines of *res judicata*, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable or otherwise) or laches shall apply to such Causes of Action upon or after the Confirmation or Consummation of the Plan, if any.

Subject to the exculpation provisions authorized by the Plan and the Confirmation Order, potential Causes of Action which may be pursued by the Debtor also include, without limitation, any other Causes of Action, whether legal, equitable or statutory in nature, arising out of, or in connection with the Debtor's business or operations.

In addition, there may be other Causes of Action which currently exist or may subsequently arise that are not set forth here or in the Disclosure Statement because the facts

upon which such Causes of Action are based are not currently or fully known by the Debtor and, as a result, cannot be raised during the pendency of the Chapter 11 Case. All such Causes of Action shall vest in the reorganized Debtor. The failure to list any such unknown Causes of Action in the Disclosure Statement shall not limit the right of the Debtor to pursue any unknown Cause of Action to the extent that the facts underlying such unknown Cause of Action subsequently become fully known to the Debtor nor does the Debtor intend to waive any such Cause of Action.

Except as otherwise provided in the Plan or in any contract, instrument, release, or other agreement entered into in connection with the Plan, in accordance with section 1123(b)(3) of the Bankruptcy Code, any claims, rights, and Causes of Action that the Debtor has retained against any Entity may exclusively be enforced, in accordance with the best interests of the Debtor, and it shall have the exclusive right, authority, duty, responsibility and discretion to institute, prosecute, abandon, settle, or compromise any and all such actions without any further order of the Bankruptcy Court or any other court.

**E.     Insurance Preservation**

Nothing in the Plan shall diminish or impair the enforceability of any policies of insurance that may cover any Claims against the Debtor or any other Entity.

**F.     Accounting**

Any and all reserves maintained by the Debtor in connection with the Distribution of funds on account of the Allowed Claims may be maintained by bookkeeping entries alone; the Debtor need not (but may) establish separate bank accounts for such purposes.

## ARTICLE VII.
## EXECUTORY CONTRACTS AND UNEXPIRED LEASES

**A.     Franchise Agreement**

On the Effective Date, the Franchise Agreement shall be deemed to have been assumed by the Debtor pursuant to 11 U.S.C. § 365(a), and the Debtor shall be deemed to have cured any monetary default upon the Effective Date. In particular, the Debtor states that it is setting off against the Franchisor's pre-petition Claim, in the amount of $12,275.75 as reflected in its Proof of Claim filed with the Bankruptcy Court on January 21, 2011 because the Franchisor has failed to credit the Debtor's account in this amount post-petition, such that the cure amount for the Franchise Agreement is $0.

**B.     Other Contracts**

On the Effective Date, the Debtor will be deemed to have assumed those executory contracts and unexpired leases, including the Franchise Agreement identified in Exhibit D attached and incorporated by reference as if set forth in full here. Any counterparty to an executory contract listed in Exhibit D must file any and all objections relating to Exhibit D, including the proposed cure amounts, on or before the deadline to object to confirmation or such

counterparty shall be forever barred from asserting and otherwise prosecuting its objection concerning the Assumption Schedule at Exhibit D.

**C.      Rejection of Other Executory Contracts and Unexpired Leases**

Any pre-petition executory contracts or unexpired leases (1) which have not expired by their own terms on or prior to the Effective Date, or (2) which have not been assumed or rejected pursuant to the Plan or with the approval of the Bankruptcy Court, shall be deemed rejected by the Debtor as of the Petition Date, and the entry of the Confirmation Order by the Bankruptcy Court shall constitute approval of the rejections of such executory contracts and unexpired leases pursuant to sections 365(a) and 1123 of the Bankruptcy Code.

**D.      Rejection Damages Claim**

Each Entity (i) that is a counterparty to an executory contract or unexpired lease that is rejected as of the Petition Date pursuant to this Plan and the Confirmation Order, and (ii)  that is a counterparty to an executory contract or unexpired lease that is rejected as of the Effective Date will be entitled to file, not later than thirty (30) days following the rejection, a Proof of Claim for damages alleged to have been suffered due to such rejection unless another date is set by the Bankruptcy Court for the same.  Any Entity that has a Claim for damages as a result of the rejection of an executory contract or unexpired lease pursuant to this paragraph of the Plan that does not file a Proof of Claim in accordance with the terms and provisions of the Plan with the Bankruptcy Court (and serve such Proof of Claim upon the Plan Administrator) will be forever barred from asserting that Claim against, and such Claim shall be unenforceable against, the Debtor or the post confirmation Estate.

<div align="center">

**ARTICLE VIII.**
**CONDITIONS PRECEDENT TO CONFIRMATION**
**AND THE EFFECTIVE DATE**

</div>

**A.      Acceptance or Rejection of the Plan**

     1.      Acceptance by Impaired Classes

An Impaired Class of Claims will have accepted the Plan if the Holders of at least two-thirds in amount and more than one-half in number of the Allowed Claims in the Class actually voting have voted to accept the Plan, in each case not counting the vote of any Holder designated under section 1126(e) of the Bankruptcy Code.

     2.      Nonconsensual Confirmation

The Bankruptcy Court may confirm the Plan over the dissent of any Impaired Class if all of the requirements for consensual confirmation under subsection 1129(a), other than subsection 1129(a)(8), of the Bankruptcy Code and for nonconsensual confirmation under subsection 1129(b) of the Bankruptcy Code have been satisfied.  In the event that any impaired Class of Claims shall fail to accept the Plan in accordance with section 1129(a) of the Bankruptcy Code,

the Debtor reserves the right to (a) request that the Bankruptcy Court confirm the Plan in accordance with section 1129(b) of the Bankruptcy Code or (b) amend the Plan.

## B.    Conditions Precedent to Confirmation Date of the Plan

The occurrence of the Confirmation Date shall be subject to satisfaction of the following conditions precedent:

1.    The entry of the Confirmation Order in form and substance satisfactory to the Debtor.

2.    All provisions, terms and conditions hereof are approved in the Confirmation Order or in another final order of the Bankruptcy Court.

3.    The Debtor is authorized to take all actions necessary or appropriate to enter into, implement and consummate the Plan and other agreements or documents created in connection with the Plan.

4.    The provisions of the Confirmation Order are nonseverable and mutually independent.

5.    All Entities shall be permanently enjoined from enforcing or attempting to enforce any contractual, legal or equitable right satisfied, compromised or settled pursuant to Article IX Section B of the Plan.

## C.    Conditions Precedent to the Effective Date of the Plan

The occurrence of the Effective Date and the Consummation of the Plan are subject to satisfaction of the following conditions precedent:

1.    <u>Confirmation Order</u>. The Confirmation Order as entered by the Bankruptcy Court shall be a final order in full force and effect, in form and substance reasonably satisfactory to the Debtor.

2.    <u>Execution of Documents; Other Actions</u>. All actions, documents and agreements necessary to implement the Plan shall have been effected or executed.

## D.    Waiver of Conditions Precedent

To the extent legally permissible, each of the conditions precedent in Article VIII Section B and Article VIII Section C may be waived, in whole or in part, by the Debtor in its sole discretion.  Any such waiver of a condition precedent may be affected at any time, without notice or leave or order of the Bankruptcy Court and without any formal action other than proceeding as if such condition did not exist.  The failure of the Debtor to exercise any of the foregoing rights shall not be deemed a waiver of any other rights.  Upon the waiver of any conditions to the Effective Date set forth in Article VIII Section C of the Plan, and subject to the satisfaction in full of each of the remaining conditions set forth in such Article, the Plan shall

become effective in accordance with its terms without notice to third parties or any other formal action.

**E.      The Confirmation Order**

If the Confirmation Order is vacated for any reason, the Plan shall be null and void in all respects and nothing contained in the Plan or the Disclosure Statement shall: (1) constitute a waiver or release of any Claims by or against the Debtor; (2) prejudice in any manner the rights of the Debtor; or (3) constitute an admission, acknowledgment, offer or undertaking by the Debtor.

## ARTICLE IX.
## EFFECT OF PLAN CONFIRMATION

**A.      Discharge of Claims and Termination of Interests**

Except as provided in the Confirmation Order, pursuant to section 1141(d) of the Bankruptcy Code, the rights afforded under the Plan and the treatment of Claims and respective Distributions under the Plan shall be in exchange for and in complete satisfaction, settlement, discharge and release of all Claims of any nature against the Debtor, its Estate, its successor, its property or the Debtor's Affiliates that occurred prior to the Confirmation Date. Confirmation shall be a judicial determination of discharge of the Debtor from all Claims and other debts that arose before the Confirmation Date and all debts of the kind specified in sections 502(g), 502(h) or 502(i) of the Bankruptcy Code, whether or not (a) a Claim based on such debt is allowed pursuant to section 502 of the Bankruptcy Code or (b) the Holder of a Claim based on such debt has accepted the Plan. Such discharge shall void any judgment obtained against the Debtor at any time to the extent such judgment relates to a discharged Claim.

**B.      Termination of Subordination Rights and Settlement of Related Claims**

The classification and manner of satisfying all Claims and the respective Distributions and treatments hereunder take into account and/or conform to the relative priority and rights of the Claims in each Class in connection with any contractual, legal or equitable subordination rights relating thereto whether arising under general principles of equitable subordination, section 510(b) of the Bankruptcy Code or otherwise, and any and all such rights are settled, compromised and released pursuant to the Plan. **The Confirmation Order shall permanently enjoin, effective as of the Effective Date, all Entities from enforcing or attempting to enforce any such contractual, legal and equitable subordination rights satisfied, compromised and settled in this manner.**

**C.      Injunction**

**1.      Except as otherwise expressly provided in the Plan, after the Effective Date all Entities that have held, hold or may hold Claims against Debtor or the Debtor's Affiliates are permanently enjoined from taking any of the following actions against the Debtor, the Debtor's Affiliates or its Estate, on account of any Claims or causes of action**

arising from events prior to the Effective Date: (a) commencing or continuing in any manner any action or other proceeding of any kind; (b) enforcing, attaching, collecting or recovering by any manner or in any place or means any judgment, award, decree or order; (c) creating, perfecting, or enforcing any lien or encumbrance of any kind; and (d) asserting any defense or right of setoff, subrogation or recoupment of any kind against any obligation, debt or liability due to the Debtor or the Debtor's Affiliates.

2.      By accepting Distributions pursuant to the Plan, each Holder of an Allowed Claim receiving Distributions pursuant to the Plan will be deemed to have specifically consented to the Claims treatment and injunctions set forth herein.

### D.      Terms of Existing Injunctions or Stays

Unless otherwise provided, all injunctions or stays provided for in the Chapter 11 Case pursuant to sections 105, 362 or 525 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the Effective Date. The Confirmation Order will permanently enjoin the commencement or prosecution by any Entity, whether directly, derivatively or otherwise, of any Claims, obligations, suits, judgments, damages, demands, debts, rights, causes of action or liabilities released pursuant to the Plan.

### E.      Exculpation

None of the Debtor, its Estate, the Debtor's Affiliates or any of their respective present or former officers, directors, shareholders, employees, advisors, attorneys or agents acting in such capacity or their respective affiliates, shall have or incur any liability to, or be subject to any right of action by any Holder of a Claim or any other party in interest, or any of their respective agents, shareholders, employees, representatives, financial advisors, attorneys or affiliates, or any of their successors or assigns, for any act or omission in connection with, relating to, or arising out of (1) any act taken or omitted to be taken on or after the Petition Date; (2) the Disclosure Statement, the Plan, and the documents necessary to effectuate the Plan; and  (3) the administration of the Plan and the Distribution of property under the Plan

### ARTICLE X.
### MISCELLANEOUS

### A.      Section 1146 Exemption

Pursuant to section 1146(a) of the Bankruptcy Code, the issuance, transfer, or exchange of a security, or the making or delivery of an instrument of transfer under the Plan, may not be taxed under any law imposing a stamp tax or similar tax, and the Confirmation Order shall direct the appropriate state or local governmental officials or agents to forego the collection of any such tax or governmental assessment and to accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment. Unless the Bankruptcy Court orders otherwise, any of the foregoing transactions taken on or prior to the Effective Date shall be deemed to have been in furtherance of, or in connection with, the Plan.

**B.      Business Day**

If any payment or act under the Plan is required to be made or performed on a date that is not a business day, then the making of such payment or the performance of such act may be completed on the next succeeding business day, but shall be deemed to have been completed as of the required date.

**C.      Severability**

The provisions of this Plan shall not be severable unless such severance is agreed to by the Debtor and such severance would constitute a permissible modification of the Plan pursuant to section 1127 of the Bankruptcy Code.

**D.      Substantial Consummation**

**On the Effective Date, the Plan shall be deemed to be substantially consummated under sections 1101 and 1127(b) of the Bankruptcy Code.**

**E.      Conflicts**

Except as set forth below, to the extent that any provision of the Disclosure Statement, the Plan or the Confirmation Order (or any exhibits, schedules, appendices, supplements or amendments to the foregoing), conflict with each other or are in any way inconsistent, the Confirmation Order, as consented to by the Debtor, shall govern and control.

**F.      Further Assurances**

The Debtor, all Holders of Claims receiving Distributions under the Plan, and all other parties in interest shall, from time to time, prepare, execute and deliver agreements or documents and take other actions as may be necessary or advisable to effectuate the provisions and intent of the Plan.

**G.      Notices**

All notices, requests, and demands required by the Plan or otherwise, to be effective, shall be in writing, including by facsimile transmission, and, unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually delivered to all of the following, or in the case of notice by facsimile transmission, when received by all of the following, addressed as follows or to such other addresses as filed with the Bankruptcy Court:

**To the Debtor:**

RW Louisville Hotel Associates, LLC
James J. Papovich, General Manager
1325 South Hurstbourne Parkway
Louisville, Kentucky 40222
(502) 426-2601 – telephone
(502) 327-6537 – fax

**With a copy to:**

James S. Goldberg, Esq.
Lea Pauley Goff, Esq.
Emily L. Pagorski, Esq.
Stoll Keenon Ogden PLLC
2000 PNC Plaza
500 West Jefferson Street
Louisville, Kentucky 40202
(502) 333-6000 – telephone
(503) 333-6099 – fax

**H.     Notice And Cure of Alleged Plan Defaults**

The Debtor shall be entitled to receive written notice by the Holder of any Claim of any alleged default under the Plan, and the Debtor shall be afforded ten (10) business days to cure a payment default or a reasonable period of time to cure any other default that is subject to cure. In the event that the Debtor disputes an alleged default, it may seek a determination of the same from the Court and the Debtor shall not be required to cure until and unless the Court determines that a default exists.  The failure to provide notice required under this paragraph within thirty (30) days of the occurrence of such default shall result in a waiver of that claim of default.

**I.     Filing of Additional Documents**

On or before the Effective Date, the Debtor may file with the Bankruptcy Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.

**J.     Successors and Assigns**

The rights, benefits and obligations of any Entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor or assign of such Entity.

**K.	Closing of Case**

The Debtor shall, promptly upon the full administration of the Chapter 11 Case, file with the Bankruptcy Court all documents required by Bankruptcy Rule 3022 and any applicable order of the Bankruptcy Court to close the Chapter 11 Case but this is without prejudice to the right of the Debtor to move to close the case at any time.

<div align="center">

**ARTICLE XI.**
**RETENTION OF JURISDICTION**

</div>

Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, the Bankruptcy Court shall retain and have exclusive jurisdiction after the Effective Date over any matter arising under the Bankruptcy Code, arising in or related to the Chapter 11 Case or the Plan, or that relates to the following, in each case to the greatest extent permitted by applicable law:

1.	to enter such orders as may be necessary or appropriate to implement, consummate or aid in the execution of the provisions of the Plan and all contracts, instruments, releases, and other agreements or documents created in connection with the Plan;

2.	to determine any and all motions, adversary proceedings, applications and contested or litigated matters that may be pending on the Effective Date or that, pursuant to the Plan, may be instituted by the Debtor or the Reorganized Debtor after the Effective Date; provided, however, that each reserves the right to commence collection actions, actions to recover receivables and other similar actions in all appropriate jurisdictions;

3.	to ensure that Distributions to Holders of Allowed Claims are accomplished as provided herein;

4.	to hear and determine any timely objections to Administrative Claims and Priority Claims or to Proofs of Claim filed, both before and after the Confirmation Date, including any objections to the classification of any Claim, and to allow, disallow, determine, liquidate, classify, estimate or establish the priority of or secured or unsecured status of any Claim, in whole or in part;

5.	to enter and implement such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, revoked, modified, reversed or vacated;

6.	 to consider any modifications of the Plan, to cure any defect or omission, or reconcile any inconsistency in any order of the Bankruptcy Court, including the Confirmation Order;

7.	to hear and determine all applications for awards of compensation for services rendered and reimbursement of expenses incurred prior to the Confirmation Date;

8.      to hear and determine disputes arising in connection with or relating to the Plan or the interpretation, implementation, or enforcement of the Plan or the extent of any Entity's obligations incurred in connection with or released or exculpated under the Plan;

9.      to issue injunctions, enter and implement other orders or take such other actions as may be necessary or appropriate to restrain interference by any Entity with consummation or enforcement of the Plan;

10.      to determine any other matters that may arise in connection with or are related to the Plan, the Disclosure Statement, the Confirmation Order or any contract, instrument, release or other agreement or document created in connection with the Plan or the Disclosure Statement;

11.      to hear and determine matters concerning state, local and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code;

12.      to hear any other matter or for any purpose specified in the Confirmation Order that is not inconsistent with the Bankruptcy Code; and

13.      to enter a final decree closing the Chapter 11 Case.

## ARTICLE XII.
## MODIFICATION, REVOCATION, OR WITHDRAWAL OF THE PLAN

### A.      Modification of Plan

The Debtor reserves the right, in accordance with the Bankruptcy Code and the Bankruptcy Rules, in its sole discretion to amend or modify the Plan at any time prior to the entry of the Confirmation Order.  Upon entry of the Confirmation Order, the Debtor may, upon order of the Bankruptcy Court, amend or modify the Plan, in accordance with section 1127(b) of the Bankruptcy Code, or remedy any defect or omission or reconcile any inconsistency in the Plan in such manner as may be necessary to carry out the purpose and intent of the Plan.  A Holder of a Claim that has accepted the Plan shall be deemed to have accepted the Plan as modified if the proposed modification does not materially and adversely change the treatment of the Claim of such Holder and the votes of each Class for or against the Plan shall be counted and used in connection with the modified plan of reorganization.

### B.      Revocation, Withdrawal or Non-Consummation

The Debtor reserves the right to revoke or withdraw the Plan prior to the Confirmation Date and to file subsequent plans of reorganization.  If the Debtor revokes or withdraws the Plan, or if the Confirmation Order confirming the Plan shall not be entered or become a final order, then (1) the Plan shall be null and void in all respects; (2) any settlement or compromise embodied in the Plan (including the fixing or limiting to an amount certain any Claim or Class of Claims, assumption or rejection of executory contracts or leases affected by the Plan, and any document or agreement executed pursuant to the Plan), shall be deemed null and void; and (3) nothing contained in the Plan, and no acts taken in preparation for consummation of the Plan,

shall (a) constitute a waiver or release of any Claim by or against, the Debtor or any other Entity; (b) prejudice in any manner the rights of the Debtor, or any other Entity, (c) constitute an admission of any sort by the Debtor, or any other Entity; or (d) constitute a release of any Causes of Action possessed or maintained by the Debtor.

<center>(Remainder of page intentionally left blank)</center>

Dated: March 7, 2011

Respectfully submitted,

_____

Name: James J. Papovich
Title: General Manager, RW Louisville
Hotel Associates, LLC