UNITED STATES BANKRUPTCY COURT
FOR THE
WESTERN DISTRICT OF KENTUCKY

In re:   RW LOUISVILLE HOTEL ASSOCIATES, LLC

      Debtor                                                      CASE NO. 10-35356

                                                                                 CHAPTER    11

**ORDER DENYING CONFIRMATION OF DEBTOR'S FOURTH AMENDED
PLAN OF REORGANIZATION**

THIS MATTER comes before the Court following the evidentiary hearing for confirmation of Debtor's Fourth Amended Plan of Reorganization (the "Proposed Plan"). For the reasons discussed below, the Court denies confirmation of the Proposed Plan.

The Proposed Plan cannot be confirmed for at least two reasons.[1]

1.) 11 U.S.C. § 1129(b)(2)(B): The Proposed Plan violates 11 U.S.C. § 1129(b)(2)(B), commonly referred to as the "absolute priority rule." Under the absolute priority rule, an equity owner of a reorganized entity cannot retain that ownership interest in the entity unless each holder of an unsecured claim will "receive or retain on account of such claim property of a value, as of the effective date of the plan, equal to the allowed amount of such claim." 11 U.S.C. § 1129(b)(2)(B)(i). The Sixth Circuit recognizes an exception to the absolute priority rule, the so-called "new value" exception, which permits an equity holder to retain its interest even if unsecured classes will not be fully paid, if the equity holder contributes new value to the reorganized entity equivalent to the value of the interest retained. *See Teamsters Nat'l Freight Indus. Negotiating*

---

[1] Creditor ORIX Capital Markets, LLC as special servicer for Wells Fargo Bank, Minnesota, National Association, successor by merger to Norwest Bank Minnesota, National Association, as trustee for the registered holders of DLJ Commercial Mortgage Corp., Commercial Mortgage Pass-Through Certificates, Series 1998-CF2 ("Wells Fargo") has also raised several other objections to confirmation. Given the obvious barriers to confirmation presented by 11 U.S.C. § 1129(b)(2)(B) and 11 U.S.C. § 1129(a)(10) here, the Court does not find it necessary to reach the merits of those other objections.

*Comm. v. U.S. Truck Co. (In re U.S. Truck Co.)*, 800 F.2d 581, 588 (6th Cir. 1986). In this case, however, the Proposed Plan does not contemplate the injection of any new value by the sole equity holder, despite the fact that it will retain its entire equity interest, unimpaired.

Instead, Debtor asserts that all unsecured creditors will be paid in full by virtue of the Proposed Plan's promise to pay all classes of unsecured creditors[2] over time with 5.5% interest.[3] According to Debtor, the promise to pay 100% of their claims over time with 5.5% interest would be the equivalent of paying those creditors in full on the date of confirmation–i.e. the present value of the claims– and, therefore, the absolute priority rule would not be violated despite the sole equity holder's retention of its equity interest in Debtor.

Debtor's argument clearly fails. Debtor provides no independent evidence that the proposed 5.5% interest rate will in fact give unsecured creditors the present value of their claims. Instead, Debtor derives the 5.5% interest rate from the 6.75% interest rates set by the Court in its July 11, 2011 Order Setting Interest Rate for Plan Classes 1 and 7 with respect to Debtor's proposed Third Amended Plan of Reorganization. Debtor apparently assumes that because the Court determined that 6.75% would be an appropriate interest rate for Wells Fargo's "unsecured" deficiency claim under the terms of the Third Amended Plan of Reorganization, that interest rate would be appropriate for *all* claims designated as unsecured under the Proposed Plan, after being adjusted downward to account for the shorter payoff periods contemplated by the Proposed Plan.

In so arguing, Debtor mistakenly assumes that all "unsecured" creditor classes will bear the same risk of nonpayment under the Proposed Plan. That clearly cannot be true. Class 7, Wells Fargo's deficiency claim, will not be "unsecured" under the terms of both the Third Amended Plan of Reorganization and the Proposed Plan. Debtor has proposed that the Class 7 claim will be "secured by a second mortgage lien on the Debtor's real property." None of the other unsecured classes are given such security. They are instead offered a personal guaranty of dubious value by

---

[2]Although Debtor has divided unsecured creditors into several classes, which presents problems of its own, discussed further below, all unsecured classes would be paid at the same interest rate.

[3]Because the 5.5% interest would not begin to be paid until six months after the date of confirmation, the interest rate would effectively be lower.

the Debtor's principal, Mr. James J. Papovich ("Mr. Papovich").

The unsecured classes that are given only a guaranty by Mr. Papovich face a higher, or at least different, level of risk of nonpayment than Class 7. Of Mr. Papovich's approximately $500,000 in unencumbered personal assets, only around $100,000 of assets are liquid. And, nothing prevents Mr. Papovich from encumbering those assets at any time. Indeed, Mr. Papovich is already potentially liable for more than $500,000 under a separate personal guaranty given to Debtor's Holiday Inn franchisor. Thus, his guaranty to the claimants here is practically worthless. On the other hand, although the second lien on Debtor's real estate offered to Class 7 is possibly[4] worthless right now, if Debtor's financial projections are to be believed,[5] it will have value during the life of the plan. In any event, it is clear that the level of risk of nonpayment as between the classes is, at least, *different.*

Because risk of nonpayment constitutes a key component of interest rates, interest rates logically must differ where risk differs. Accordingly, the Court cannot treat the interest rate applied to Class 7 as a proxy for the interest rate needed to give other unsecured classes the present value of their claims.

Debtor has proposed that the current equity owner retain all of its rights in the reorganized debtor without providing new value. Because Debtor has failed to demonstrate that the unsecured creditors will receive the entire value of their claims at confirmation, the Proposed Plan fails to meet the requirements of 11 U.S.C. § 1129(b)(2)(B) and cannot be confirmed.

2.) 11 U.S.C. § 1122 and 11 U.S.C. § 1129(a)(10): The Proposed Plan also cannot be confirmed because, once claims are properly classified under 11 U.S.C. § 1122, Debtor cannot meet the requirement under 11 U.S.C. § 1129(a)(10) that at least one impaired class accepted the Proposed Plan.

Although 11 U.S.C. § 1122 expressly only prohibits the classification of dissimilar claims

---

[4] Although the parties have stipulated that the value of Debtor's reals estate as $11,200,000.00, it is entirely possible that the real estate is worth more than that amount, giving the second lien some amount of "equity."

[5] If Debtor's financial projections cannot be relied upon, the Proposed Plan cannot be confirmed under 11 U.S.C. § 1129(a)(11), the "feasibility test."

together, the Sixth Circuit has interpreted 11 U.S.C. § 1122 as also giving bankruptcy judges broad discretion to limit the separate classification of similar claims. *See U.S. Truck*, 800 F.2d at 586-87 ("Unless there is some requirement of keeping similar claims together, nothing would stand in the way of a debtor seeking out a few impaired creditors (or even one such creditor) who will vote for the plan and placing them in their own class."); *Bustop Shelters of Louisville, Inc. v. Classic Homes, Inc. (In re Bustop Shelters of Louisville, Inc.)*, 914 F.2d 810, 813 (6th Cir. 1990). In this, the *fourth* attempt by Debtor to propose a confirmable plan, Debtor has clearly engaged in inappropriate "gerrymandering" of classes.

Wells Fargo opposes confirmation of the Proposed Plan. It is the only secured creditor and, by virtue of its substantial deficiency claim, by far the largest unsecured creditor. It has also purchased a number of unsecured "trade" creditor claims to the effect that it can cause any class in which such claims are included to vote against confirmation. In other words, unless Debtor is allowed to create an unsecured class that excludes Wells Fargo claims, Debtor cannot obtain the approval of at least one impaired class of claims required by 11 U.S.C. § 1129(a)(10).

In Debtor's Third Amended Plan of Reorganization, Debtor attempted to obtain an impaired accepting class by proposing to segregate its second largest unsecured creditor, Sysco, in its own class as an "essential vendor." Although the Court never formally addressed the appropriateness of such classification, it expressed skepticism, which apparently prompted Debtor to add "window dressing." Under the Proposed Plan, Debtor has renamed the Sysco class as "post-petition vendor claims," moving certain trade creditor claims in with that of Sysco. Debtor now asserts that this is necessary because the vendors in the "post-petition vendor claims" class represent very important vendors to Debtor with which Debtor wants to ensure ongoing business by committing to a minimum volume of business in the future. Under the Proposed Plan, Debtor has also segregated all of the unsecured trade creditor claims purchased by Wells Fargo into classes separate from other trade creditors.

Had Debtor proposed the instant classification scheme in an earlier version of its plan, Debtor's purported business reasons for so classifying creditors might[6] have been more credible.

---

[6] As discussed above, the Court previously expressed skepticism regarding Debtor's description of Sysco as an "essential vendor."

This new classification schemes comes, however, after balloting on the prior version of the plan, which showed that Debtor lacked the votes to secure a consenting impaired class without at least segregating Wells Fargo's purchased trade creditor claims from Sysco's claim. All of the creditors whose claims were moved in with that of Sysco to create the so-called "post-petition vendor claims" class had already approved their treatment under Debtor's Third Amended Plan of Reorganization, so they did not really need the better treatment provided under the Proposed Plan. Based on testimony by Mr. Papovich, it is clear that Debtor's counsel invented the reclassification strategy for the Proposed Plan.

Debtor's machinations make it clear that Debtor's so-called business reasons for creating the "post-petition vendor claims" class and segregating claims purchased by Wells Fargo are merely a pretext. The Proposed Plan smacks of overly-sharp lawyering and bad faith. Accordingly, based on the entire record as a whole, the Court must in its discretion decline to approve the classification scheme set forth in the Proposed Plan as violative of 11 U.S.C. § 1122. Furthermore, because the appropriate classification scheme–one in which Wells Fargo's unsecured claims are not improperly segregated from other unsecured claims–would obviously result in Debtor's failure to obtain approval of its reorganization by one impaired class, the Court must conclude that the Proposed Plan cannot be confirmed under 11 U.S.C. § 1129(a)(10).

Based on the foregoing, the Court being otherwise sufficiently advised,

IT IS HEREBY ORDERED, ADJUDGED AND DECREED that confirmation of the Proposed Plan is DENIED.

Thomas H. Fulton
United States Bankruptcy Judge

Dated: September 30, 2011